NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO O.F.

No. 1 CA-JV 23-0059
FILED 8-15-2023

Appeal from the Superior Court in Maricopa County
No. JD40690
The Honorable Julie Ann Mata, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Bailey Leo
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Michael S. Catlett joined.

**C R U Z**, Judge:

¶1        P.F. ("Mother") appeals the superior court's order terminating her parental rights to her child, O.F.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        O.F. was born in 2021 and was exposed to methamphetamine in utero.  Mother tested positive for amphetamine, fentanyl, and THC the day after O.F.'s birth.  She disclosed that she had used methamphetamine every other day during her pregnancy and that she began using drugs at the age of eleven.  The Department of Child Safety ("DCS") removed O.F. from Mother's care and filed a dependency petition.  The superior court found O.F. dependent and approved a case plan of family reunification. DCS put reunification services in place.

¶3        Mother consistently tested positive for methamphetamine throughout the dependency.  Although she completed parenting and domestic violence classes, Mother was inconsistent with visitation and was closed out of case aide and visitation services on multiple occasions. Mother was closed out at TERROS, which provided Mother with substance abuse treatment, for failing to make progress.  In September 2022, DCS moved to terminate Mother's parental rights pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3) (chronic substance abuse) and (B)(8)(c) (fifteen months' out-of-home placement).

¶4        Mother, who was represented by counsel, appeared at the termination hearing and informed the court that she did not want to contest the allegations in the termination motion.  After a colloquy, the superior court found Mother had knowingly, intelligently, and voluntarily waived her right to contest the allegations in the termination motion.  A DCS case manager provided testimony, and at the conclusion of the hearing, the superior court terminated Mother's parental rights on the grounds alleged in the motion.[1]

¶5        Mother filed an untimely notice of appeal.  On this court's motion we stayed the appeal to permit Mother to seek relief under Arizona Rule of Procedure for Juvenile Court ("Rule") 603(a)(5)(A).  The superior

---

[1]        The superior court also terminated the parental rights of O.F.'s father.  He is not a party to this appeal.

court granted leave for Mother to file a new notice of appeal within seven days of the court's order, and she did so. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

**DISCUSSION**

**¶6**   Mother first argues the superior court violated her due process rights by accepting her no-contest admission. She claims that her waiver of her right to trial was not knowing, voluntary, and intelligent because the superior court failed to advise her that (1) DCS bore the burden of proving the allegations of the termination motion and (2) she had the right to present documentary evidence.

**¶7**   Rule 353(e) addresses no contest pleas in termination proceedings. We review the interpretation of court rules de novo. *Timothy W. v. Dep't of Child Safety*, 240 Ariz. 231, 232, ¶ 6 (App. 2016). In interpreting a court rule, we apply general principles of statutory construction and begin with the plain language of the rule. *Id.* When a parent enters a no contest plea, the superior court does not automatically terminate the parent's parental rights. Rule 353(e). Instead, the superior court "must":

(1) determine whether the parent understands the rights being waived;

(2) determine whether the parent knowingly, intelligently, and voluntarily . . . does not contest the allegations;

(3) determine whether a factual basis exists to support the termination of parental rights; and

(4) make the findings and enter the orders in [Rule 353](h).

*Id.*

**¶8**   Here, the superior court advised Mother that by pleading no contest, she was giving up her right to a trial on the termination motion, including her right to have her attorney confront and cross-examine any witness who testified against her, her right to call her own witnesses, the right to have the court compel her witnesses to appear and testify on her behalf, and the right to request the termination proceedings be closed to the public. Mother affirmatively indicated on the record that she understood she was giving up those rights. *Cf.* Rule 352(c)(5) (at initial termination hearing superior court must advise parent of the parent's rights to an attorney, to have a trial on the termination petition or motion, to call

witnesses, to cross-examine witnesses called by another party, and to have the court compel the attendance of witnesses). Mother cites no authority, and we are not aware of any, for the proposition that a parent's admission cannot be knowing, intelligent, and voluntary if the superior court does not specifically advise a parent that (1) DCS bears the burden of proving the termination allegations and (2) by giving up her right to trial, the parent is giving up her right to present documentary evidence. The court's colloquy sufficiently advised Mother of the rights she was waiving. And, additionally, although the superior court accepted Mother's no contest plea, it still gave Mother's counsel the opportunity to present "[a]ny additional evidence or testimony" after the DCS case manager testified, but her counsel chose not to do so. The superior court did not err when it accepted Mother's waiver as knowing, intelligent, and voluntary.

¶9 Mother next argues the superior court violated her due process rights by failing to make all of the required findings of fact in its order terminating her parental rights. "We review the sufficiency of findings of fact de novo as a mixed question of fact and law." *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 296, ¶ 14 (App. 2020).

¶10 Arizona law requires termination orders to "be in writing" and "recite the findings on which the order is based." A.R.S. § 8-538; *see also* Rule 353(h)(2)(A) (superior court must "make specific findings of fact in support of the termination of parental rights.").

¶11 "The primary purpose for requiring a court to make express findings of fact and conclusions of law is to allow the appellate court to determine exactly which issues were decided and whether the lower court correctly applied the law." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24 (App. 2012). To terminate parental rights, the superior court must "conclude that the petitioner has proved by clear and convincing evidence that at least one of the statutory grounds for termination is met, and that the petitioner has proved by a preponderance of the evidence that severance of parental rights would be in the best interest of the child." *Id.* at ¶ 22. The superior court "must specify at least one factual finding sufficient to support each of those conclusions of law." *Id.* "Findings must include all of the ultimate facts—that is, those necessary to resolve the disputed issues." *Id.* at 241, ¶ 25 (citation and internal quotation marks omitted). Factual findings are insufficient when they are so lacking in detail that this court must search the record to uncover ultimate facts that the superior court may have relied upon or guess about the process by which the court reached its decision. *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 538-39, ¶¶ 17-19 (App. 2018).

¶12        DCS argues Mother waived this issue.  Even if Mother did not waive this issue by failing to object to the sufficiency of the superior court's findings of fact below, the superior court's findings of fact were sufficient in this case.

¶13        Here, the superior court was required to state what facts supported its conclusion that DCS had proven that Mother had a history of chronic substance abuse, rendering her unable to discharge her parental responsibilities, and there existed reasonable grounds to believe her condition would continue for a prolonged indeterminate period.  *See* A.R.S. § 8-533(B)(3).  The court was also required to state what facts supported its conclusion that DCS had proven that O.F. had been in an out-of-home placement for fifteen months or longer, DCS had made a diligent effort to provide appropriate reunification services, Mother had been unable to remedy the circumstances causing O.F. to be in an out-of-home placement, and there was a substantial likelihood that she would not be capable of exercising proper and effective care and control in the near future.  *See* A.R.S. § 8-533(B)(8)(c).  Finally, the court was required to state what facts supported its conclusion that DCS had proven by a preponderance of the evidence that termination was in O.F.'s best interests.  *See* A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

¶14        The superior court's order stated that its "Conclusions of Law . . . constitute[d] Findings of Fact as may be appropriate."  The order detailed at length Mother's long history of drug use before and after O.F.'s birth, including her criminal history of drug charges, her inability to demonstrate sobriety throughout the dependency as evidenced by monthly positive drug tests, and her failure to engage in substance abuse treatment. The order further detailed DCS's efforts to provide additional reunification services, Mother's failure to complete most of those services, and the fact that O.F. had been in an out-of-home placement for more than fifteen months, since March 2021, pursuant to a court order.  Finally, in support of the court's conclusion that termination was in O.F.'s best interests, the court's order stated the following facts—O.F. was adoptable and was living in an adoptive placement that was meeting his needs, and continuation of the parent-child relationship would be detrimental to O.F. because it would delay permanency for him.  We find no error or violations of due process in the superior court's order terminating Mother's parental rights to O.F.

**CONCLUSION**

¶15        For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights to O.F.



AMY M. WOOD • Clerk of the Court
FILED:     AA